## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLIANCE OF NONPROFITS FOR ) <br> INSURANCE RISK RETENTION GROUP,) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WESPAC FOUNDATION, INC. and ) <br> CHRISTOPHER MANHART, ) <br> ) <br> Defendants. ) | Case No. 1:25-cv-1320 |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, ALLIANCE OF NONPROFITS FOR INSURANCE RISK RETENTION GROUP ("ANI"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment against Defendant WESPAC FOUNDATION, INC. ("WESPAC"), states as follows:

### **NATURE OF THE ACTION**

1. In this action, ANI seeks a determination of its rights and obligations under various insurance policies issued to WESPAC, in connection with a lawsuit filed against WESPAC by Christopher Manhart ("Manhart").

### **JURISDICTION AND VENUE**

2. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

3. Plaintiff ANI is a nonprofit corporation organized under the laws of the State of Vermont with its principal place of business California. ANI is a citizen of Vermont and California.

4. Defendant WESPAC is a corporation organized under the laws of the State of New York with its principal place of business in White Plains, New York.

5. Upon information and belief, Defendant Manhart is a resident Indiana and a citizen of the State of Indiana. Plaintiff ANI does not assert any claims against Defendant Manhart and he has been named as a defendant in this action solely as a necessary and indispensable party.

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff ANI, on the one hand, and Defendants WESPAC and Manhart, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying WESPAC with regard to the Underlying Action, exceeds $75,000, exclusive of interest and costs.

7. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events pertaining to the subject insurance policies occurred in this District.

8. An actual justiciable controversy exists between ANI, on the one hand, and WESPAC and Manhart, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

9. On September 9, 2024, Manhart, individually and on behalf of all others similarly situated, filed a lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:24-cv-8209, captioned *Christopher Manhart, individually and on behalf of all others similarly situated, v. AJP Education Foundation, Inc. et al.* (the "Underlying Action").

10. The operative first amended verified complaint in the Underlying Action (the "Complaint") asserts twelve counts against the defendants: 1) Statutory Violation of 625 ILCS § 5/11-1416, Obstructing Highways; 2) Public Nuisance; 3) False Imprisonment; 4) Highway Obstruction In-Concert; 5) Public Nuisance In-Concert; 6) False Imprisonment In-Concert; 7)

Conspiracy to Obstruct Highways; 8) Conspiracy to Commit Public Nuisance; 9) Conspiracy to Commit False Imprisonment; 10) Aiding and Abetting Obstructing a Highway; 11) Aiding and Abetting a Public Nuisance; and 12) Aiding and Abetting False Imprisonment. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

11.     The Complaint was filed on behalf of a proposed class of individuals "who were either drivers or passengers of vehicles traveling on the morning of April 15, 2024, between the hours of 7:00 a.m. and 10:00 a.m. in Chicago, Illinois on Interstate 190 and nearby highways that connect to Interstate 190, who were confined in their vehicles because of the activists blockading traffic on Interstate 190 as it approaches the terminals at O'Hare International Airport." Ex. A, ¶ 75.

12.     The Complaint alleges that the blockade was executed as part of an international campaign to disrupt major economic centers in support of Palestinian liberation and it drew support from Hamas and the Iranian Revolutionary Guard Corps ("IRGC"). Ex. A, ¶ 2.

13.     The Complaint alleges that on April 15, 2024, the named defendants, along with nearly forty other activists, rushed the I-190 off-ramp leading into Chicago's O'Hare International Airport ("O'Hare") and used PVC pipe to connect their arms and block the entire intersection. Ex. A, ¶ 3.

14.     The Complaint alleges that after the October 7, 2024 attack by Hamas against Israel, Hamas leaders called for a resistance abroad to join the battle through agitation, spreading misinformation and disinformation through social media, and visible economic disruption. Ex. A, ¶ 41.

15.     The Complaint alleges that defendants American Muslims for Palestine ("AMP"), National Students for Justice in Palestine ("NSJP"), US Campaign for Palestinian Rights ("USCPR"), and WESPAC heeded the call by Hamas. Ex. A, ¶ 42.

16. The Complaint asserts that NSJP, which is allegedly funded by WESPAC and directed by AMP, released its Day of Resistance Toolkit (the "NSJP Toolkit") on the internet and to local chapters of more than 300 American colleges. Ex. A, ¶ 42.

17. The Complaint alleges that the NSJP Toolkit made clear that NSJP operatives and members across the country had a responsibility to join the call for mass mobilization for Palestinian political aims. Ex. A, ¶ 43.

18. The Complaint alleges that, until recently, WESPAC acted as the fiscal sponsor and the formal legal entity for tax-exempt donations to NSJP. Ex. A, ¶ 15.

19. The Complaint alleges that in March 2024, the IRGC issued a memorandum calling for an economic blockade across four continents to take place on April 15, 2024, with the organizing effort called the "A15 Action." Ex. A, ¶ 47.

20. The Complaint alleges that A15 Action's goal was to block the arteries of capitalism and jam the wheels of production. Ex. A, ¶ 49.

21. The Complaint alleges that AMP, NSJP, USCPR, and WESPAC were instrumental in coordinating the national A15 Action plan and the plans specific to the Chicago area. Ex. A, ¶ 56.

22. The Complaint alleges that on April 15, 2024, the defendants willfully, intentionally, and illegally blockaded Interstate 190 ("I-190") leading to O'Hare, which started at 7:00 a.m. and lasted until approximately 9:00 a.m. Ex. A, ¶¶ 60-61.

23. The Complaint alleges that as a result of the blockade, traffic was in a total standstill for miles. Ex. A, ¶ 66.

24. The Complaint alleges that as a result of the blockade, travelers were stuck in their vehicles with no knowledge whether and when the traffic blockade would end, and that innocent people could not reasonably move since they were stuck in the middle of an interstate. Ex. A, ¶ 70.

25. The Complaint alleges that underlying plaintiff Manhart was trapped in his car on the ramp to I-190 for over an hour, which resulted in him missing a flight. Ex. A, ¶ 6.

26. Count IV of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, are liable for statutory highway obstruction pursuant to a theory of in-concert liability. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 101-09.

27. Count V of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, committed the tort of public nuisance pursuant to a theory of in-concert liability. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 110-8.

28. Count VI of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, committed the tort of false imprisonment pursuant to a theory of in-concert liability. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 119-26.

29. Count VII of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, conspired with the other defendants to commit the tort of highway obstruction. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 127-33.

30. Count VIII of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, conspired with the other defendants to commit the tort of public

nuisance. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 134-40.

31. Count IX of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, conspired with the other defendants to commit the tort of false imprisonment. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 141-47.

32. Count X of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, are liable for aiding and abetting the other defendants to commit the tort of highway obstruction. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 148-53.

33. Count XI of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, are liable for aiding and abetting the other defendants to commit the tort of public nuisance. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 154-59.

34. Count XII of the Complaint alleges that AMP, WESPAC, and NSJP, among others, through their actions, are liable for aiding and abetting the other defendants to commit the tort of false imprisonment. As a result, Manhart and others on the road allegedly suffered, *inter alia*, annoyance, inconvenience, physical discomfort, anxiety, and emotional distress. Ex. A, ¶¶ 160-65.

**FISCAL SPONSOR LETTER**

35. According to a letter dated July 27, 2023, WESPAC agreed to serve as NSJP's fiscal sponsor (the "Fiscal Sponsor Letter"). A true and correct copy of the Fiscal Sponsor Letter is attached hereto as **Exhibit B**.

36. WESPAC's fiscal sponsorship of NSJP was never disclosed to ANI prior to the filing and notice of the Lawsuit.

**THE POLICIES**

A.   **CGL Policy**

37. ANI issued commercial general liability policy No. 2023-41989 ("CGL Policy") to WESPAC for the policy period November 12, 2023 to November 12, 2024. A true and correct copy of the CGL Policy is attached hereto as **Exhibit C**.

38. The commercial general liability coverage part of the CGL Policy provides liability limits of $1 million for each occurrence and $2 million in the general aggregate. Ex. C, p. 11.

39. The main form of the CGL Policy provides, in pertinent part, as follows:

**SECTION I – COVERGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.   **Insuring Agreement**[1]

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

\* \* \*

---

[1] As amended by the New York Changes – Commercial General Liability Coverage Form. Ex. C, pp. 99-100.

### 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \*

## SECTION V – DEFINITIONS

\* \* \*

**3.**[2] "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death or mental anguish resulting from any of these.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

[2] As amended by the Mental Anguish Endorsement. Ex. C, p. 82.

> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> **a.** False arrest, detention or imprisonment;
>
> * * *
>
> **17.** Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> * * *

Ex. C, pp. 36-37, 40-41, 48, 50.

40. The CGL Policy contains a Fiscal Sponsor Limitation of Coverage endorsement which provides as follows:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of an Insured's status as a "fiscal sponsor" until:
>
> a. The first Named Insured enters into a "fiscal sponsor agreement" arising out of or in connection with the First Named Insured's status as a "fiscal sponsor" for that person, entity or organization; and
>
> b. The first Named Insured provides any underwriting information and pays any additional premium required by us.
>
> This insurance does not apply to "bodily injury" or "property damage" that occurs before the first Named Insured enters into the "fiscal sponsor agreement" which is subject of the claim, loss, damage or expense or because of an offense that constitutes "personal and advertising injury" that is committed before the first Named Insured enters into the "fiscal sponsor agreement" which is the subject of the claim, loss, damage or expense.
>
> If there is other insurance available to any party pursuant to a "fiscal sponsor agreement" for "bodily injury," "property damage," or "personal and advertising injury" which are covered by this endorsement, including but not limited to a duty to defend the first Named Insured by that other insurance, the coverage provided by this endorsement is excess to that other insurance.

>"Fiscal sponsor" is defined to mean the first Named Insured's status as the entity or organization which offers its legal and tax-exempt status to another person, entity or organization pursuant to a "fiscal sponsor agreement"; who participates in the operations of that person, entity or organization by receiving assets and incurring liabilities for the mutual benefit of pursuing charitable goals; and in consideration for the benefit of that person, entity or organization has assumed responsibility to manage programs, events, revenue, grants, contributions, contracts and/or insurance programs.
>
>"Fiscal sponsor agreement" is defined as a written contract or agreement by the first Named Insured with a person, entity and/or organization in which the first Named Insured agrees to serve as a "fiscal sponsor" for such person, entity or organization.

Ex. C, p. 67.

41. The CGL Policy contains an Exclusion – Riot, Civil Commotion, Unlawful Assembly or Mob Action endorsement which provides as follows:

>This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:
>
>1.   Riot, civil commotion, unlawful assembly or mob action; or
>
>2.   Any act or omission in connection with the prevention or suppression of a riot, civil commotion, unlawful assembly or mob action.

Ex. C, p. 17.

42. ANI issued directors and officers policy no. 2023-41989-DO ("D&O Policy") to WESPAC for the policy period November 12, 2023 to November 12, 2024. A true and correct copy of the D&O Policy is attached hereto as **Exhibit D**.

43. The D&O Policy provides liability limits of $1 million for each Wrongful Act and $1 million in the annual aggregate. Ex. D, p. 1.

44. The main form of the D&O Policy contains, in pertinent part, as follows:

**1.    INSURING AGREEMENT**

>This policy shall, subject to the limit of liability set forth in Item 3 of the Declarations, pay on behalf of the "Member" all sums which the "Member" shall become legally obligated to pay as "Damages" for "Claims" resulting from any "Wrongful Act" of the "Member" or of any other person for whose "Wrongful Act" the "Member" is legally

responsible, but only if such "Wrongful Act" is committed during the policy period.

* * *

3. **DUTY TO DEFEND**

"Defense Costs" are in addition to the applicable Limits of Liability set forth in Item 3 of the Declarations, and the payment by the Company of "Defense Costs" does not reduce such applicable Limits of Liability.

The Company shall have the right and duty to defend any "Claim" against the "Member" arising from a "Wrongful Act", subject to the terms and provisions of this policy. Our right and duty to defend end when we have used up the applicable limit of liability in the payment of settlements and judgments. We may at our discretion investigate any allegation of a "Wrongful Act" and settle any "Claim" that may result. The "Member" shall give the Company such information and cooperation as it may reasonably require.

The "Member" shall not admit liability for nor settle any "Claim" or suit or incur any "Defense Costs" without the Company's prior written consent. The Company shall not be liable hereunder with respect to any settlements or "Defense Costs" to which it has not consented in writing prior to any settlement or incurring such "Defense Costs".

4. **DEFINITIONS**

* * *

B. "Bodily Injury" means bodily injury, sickness, disease or death including emotional distress or mental anguish sustained by a person.

C. "Claim" or "Claims" means any demand or any judicial or administrative suit or proceeding against any "Member", including any appeal therefrom, which seeks monetary "Damages". It is understood that:

1. The "Claim" or "Claims" must result from a "Wrongful Act" that is committed during the policy period.

2. Multiple demands, suits or proceedings arising out of the same "Wrongful Act" shall be deemed to be a single "Claim".

D. "Damages" means a monetary judgment, including claimant's attorney fees or expert witness fees awarded pursuant to a

11

  contract, a statute or law. "Damages" does not include taxes and matters deemed uninsurable.

E.  "Defense Costs" means reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond), incurred by the Company or by the "Member" with the prior written consent of the Company, and resulting solely from the investigation, adjustment, defense and appeal of any "Claim" against the "Member", but excluding salaries of any "Member" and excluding loss of earnings by any "Member." "Defense Costs do not include claimant's attorney fees or expert witness fees awarded pursuant to a contract, a statute or law."

* * *

G.  "Member" means the "Organization" and any natural person who was, is, or becomes duly elected as a director or trustee, or duly elected or appointed officer, employee, committee member, volunteer, intern or student-in-training of the "Organization", solely in his or her capacities as such. "Member" also means the spouse of a director, trustee, officer, employee, committee member, volunteer, intern or student-in-training for a claim arising solely out of his or her status as the spouse of a member: provided, however, that no coverage shall be afforded for any claim based on the "Wrongful Act" of the spouse.

H.  "Organization" means the entity(ies) designated in Item 1 of the Declarations.

* * *

K.  "Wrongful Act" means any breach of duty, error, neglect, omission or act committed during the policy period and solely in the course of the activities of the "Organization", including but not limited to:

  1.  false arrest, wrongful detention or imprisonment, or malicious prosecution;

  2.  libel, slander, defamation of character, or invasion of privacy;

  3.  wrongful entry, eviction or other invasion of the right of privacy;

  4.  infringement of copyright or trademark or unauthorized use of title;

     5.     plagiarism or misappropriation of ideas;

     6.     "Claim" or "Claims", arising from employment practices relating to a past, present or prospective employee of the "Organization", including, but not limited to, any actual or alleged wrongful termination, either actual or constructive; wrongful failure to employ or promote; wrongful discipline; alleged sexual harassment arising out of the employment relationship; alleged unlawful discrimination as defined by Title VII and/or the Unruh Civil Rights Act, or similar state law, whether direct, indirect, intentional or unintentional; or a failure to provide adequate employee policies and procedures.

     7.     "Claims" of sexual harassment brought by past or present volunteers of the "Organization," solely in their capacity as such;

     8.     Breach of responsibilities, obligations or duties imposed on a fiduciary. However, any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, amendments thereto or any similar provisions of Federal, State or local statutory law or common law are subject to a $250,000 sublimit. This sublimit includes loss and expense combined.

     9.     "Claims" of harassment, sexual or otherwise, or discrimination, brought by a third party business invitee of the "Organization."

All "Damages" for "Claims" resulting from the same "Wrongful Act" or a series of continuous or interrelated "Wrongful Acts" will be considered as arising out of one "Wrongful Act" which shall be deemed to have been committed on the date of the first such "Wrongful Act".

**5.     EXCLUSIONS**

This policy does not apply to any:

\* \* \*

B.     "Claim" or "Claims" arising out of, based upon, attributable to, or in any way involving, directly or indirectly, any actual or alleged "Bodily Injury," sickness, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof;

\* \* \*

13

    F[3]. fines, penalties, sanctions, the multiplied portion of multiplied "Damages", taxes insurance plan benefits, accommodation costs, wage and hour laws amounts, future wages, non-pecuniary relief or liability arising from matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed;

* * *

Ex. D, pp. 18-21.

45.    The D&O Policy contains a Fiscal Sponsor Limitation of Coverage endorsement which provides as follows:

> This insurance does not apply to "damages" arising out of a Member's status as a "fiscal sponsor" until:
>
> a.    The first Named Member in the Declarations page enters into a "fiscal sponsor agreement" arising out of or in connection with the First Named Member's status as a "fiscal sponsor" for that person, entity or organization; and
>
> b.    The first Named Member in the Declarations page provides any underwriting information and pays any additional premium required by the Company.
>
> This insurance does not apply to "damages" that occur before the first Named Member in the Declarations page to this policy enters into the "fiscal sponsor agreement" which is applicable to the claim or "suit" in which the "damages" are asserted.
>
> If there is other insurance available to any party pursuant to a "fiscal sponsor agreement" for "damages" which are covered by this endorsement, including but not limited to a duty to defend the first Member identified in the Declarations by that other insurance, the coverage provided by this endorsement is excess to that other insurance.
>
> "Fiscal sponsor" is defined to mean the status of first Named Member in the Declarations page to this policy as the entity or organization which offers its legal and tax-exempt status to another person, entity or organization pursuant to a "fiscal sponsor agreement"; who participates in the operations of that person, entity or organization by receiving assets and incurring liabilities for the mutual benefit of pursuing charitable goals; and in consideration for the benefit of that person, entity or organization has assumed responsibility to manage programs, events, revenue, grants, contributions, contracts and/or insurance programs.

---

[3] As amended by the Punitive and Exemplary Damages endorsement. Ex. D, p. 29.

> "Fiscal sponsor agreement" is defined as a written contract or agreement by the first Named Member in the Declarations page to this policy with a person, entity and/or organization in which the first Named Member agrees to serve as a "fiscal sponsor" for such person, entity or organization.

Ex. D, p. 11.

## COVERAGE DISPUTE

46. Defendant WESPAC sought a defense and indemnity from ANI under the CGL and D&O Policies (collectively, the "Policies") in connection with the claims asserted against it in the Underlying Action.

47. Plaintiff ANI timely disclaimed coverage for the Underlying Action under the Policies.

48. Plaintiff ANI now brings this action to obtain a judicial declaration that it owes no duties under the Policies to defend or indemnify WESPAC in connection with the claims asserted against it in the Underlying Action.

## COUNT I
### No Duty to Defend or Indemnify – CGL Policy

49. ANI incorporates by reference herein paragraphs 1 through 48 as if fully set forth herein.

50. The Insuring Agreement of Coverage A of the CGL Policy provides that ANI will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. C, p. 36, 99.

51. The Insuring Agreement of Coverage B of the CGL Policy provides that ANI will pay "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Ex. C, p. 41.

52. To the extent the Complaint does not allege that WESPAC is liable for "bodily injury", "property damage", and/or "personal and advertising injury", the claims asserted in the Complaint do not fall within the scope of the Insuring Agreements of Coverage A or Coverage

B of the CGL Policy and, therefore, no coverage is afforded under Coverage A or Coverage B of the CGL Policy.

53. To the extent the Complaint could be construed as satisfying the Insuring Agreements of Coverage A or Coverage B of the CGL Policy, certain exclusions and endorsements contained in the CGL Policy operate to preclude coverage.

54. Coverage A of the CGL Policy contains an Expected or Intended Injury Exclusion that precludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Ex. C, p. 37.

55. The Complaint alleges that the defendants, including WESPAC, willfully, intentionally, and illegally blockaded Interstate 190 ("I-190") on April 15, 2024. Ex. A, ¶¶ 60.

56. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of Coverage A of the CGL Policy, the CGL Policy would not afford coverage to WESPAC for the claims asserted against it in the Underlying Action due to the operation of the Expected or Intended Injury Exclusion.

57. The CGL Policy contains a Riot, Civil Commotion, Unlawful Assembly or Mob Action exclusion that precludes coverage for "bodily injury", "property damage", or "personal and advertising injury" arising out of "[r]iot, civil commotion, unlawful assembly or mob action." Ex. C, p. 17.

58. The Complaint alleges that Plaintiffs suffered injuries as a result of the blockade of I-190, which allegedly were in the violation of Illinois law as well as caused substantial disruption and tumult to those traveling on the interstate. Ex. A, ¶¶ 89-165.

59. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreements of Coverage A or Coverage B of the CGL Policy, the CGL Policy would not afford coverage to WESPAC for the claims asserted against it in the Underlying due to the operation of the Riot, Civil Commotion, Unlawful Assembly or Mob Action exclusion.

60. The CGL Policy contains a Fiscal Sponsor Limitation of Coverage endorsement which provides coverage for "bodily injury", "property damage", and "personal and advertising injury" arising out of WESPAC's status as a fiscal sponsor. Ex. C, p. 67.

61. The Fiscal Sponsor Endorsement states that there is no coverage arising out of WESPAC's status as a fiscal sponsor until WESPAC provides any underwriting information and pays any additional premium required by ANI. Ex. C, p. 67.

62. WESPAC never disclosed to ANI a fiscal sponsorship with NSJP, nor was any additional premium paid by WESPAC in connection with such fiscal sponsorship, and therefore no coverage is available for the Underlying Action under the CGL Policy.

WHEREFORE, Plaintiff ANI seeks a judgment that it owes no duty under the CGL Policy to defend or indemnify WESPAC in connection with the claims asserted against it in the Underlying Action.

## COUNT II
### No Duty to Defend or Indemnify – D&O Policy

63. ANI incorporates by reference herein paragraphs 1 through 48 as if the same were fully set forth at length.

64. The D&O Policy's insuring agreement states that ANI will pay all sums for which WESPAC "shall become legally obligated to pay as 'Damages' for 'Claims' resulting from any 'Wrongful Act' . . . ." Ex. D, p. 18.

65. The term "Damages" refers to "a monetary judgment, including claimant's attorney fees or expert witness fees awarded pursuant to a contract, a statute or law." Ex. D, p. 19.

66. "Claim" means any "demand or any judicial or administrative suit or proceeding" against WESPAC "which seeks monetary 'Damages.'" Ex. D, p. 19.

17

67. "Wrongful Act" refers to any breach of duty, error, neglect, omission or act committed during the policy period, including but not limited to, the conduct enumerated in sub-paragraphs 1-9 of the definition. Ex. D, 20-21.

68. To the extent the Complaint does not allege that WESPAC is to pay for any "Wrongful Act", the claims asserted in the Complaint do not fall within the scope of the Insuring Agreement of the D&O Policy and, therefore, no coverage is afforded under the D&O Policy.

69. To the extent the Complaint could be construed as satisfying the Insuring Agreement of the D&O Policy, certain exclusions and endorsements contained in the D&O Policy operate to preclude coverage.

70. Exclusion B of the D&O Policy precludes coverage for any claim "arising out of, based upon, attributable to, or in any way involving, directly or indirectly, any actual or alleged 'Bodily Injury,' sickness, disease, or death of any person or damage to or destruction of any tangible property, including the loss of use thereof." Ex. D, p. 21.

71. The D&O Policy defines "Bodily Injury" to mean "bodily injury, sickness, disease or death including emotion distress or mental anguish sustained by a person.". Ex. D, p. 19.

72. The Complaint alleges that Manhart suffered annoyance, inconvenience, physical discomfort, anxiety, and emotional distress as a result of WESPAC's conduct.

73. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the D&O Policy, the D&O Policy would not afford coverage to WESPAC for the claims asserted against it in the Underlying due to the operation of the Exclusion B since Manhart suffered bodily injuries as a result of WESPAC's conduct.

74. The D&O Policy contains a Fiscal Sponsor Limitation of Coverage endorsement which provides coverage for "damages" arising out of WESPAC's status as a fiscal sponsor. Ex. D, p. 11.

75. The Fiscal Sponsor Endorsement states that there is no coverage arising out of WESPAC's status as a fiscal sponsor until WESPAC provides any underwriting information and pays any additional premium required by ANI. Ex. D, p. 11.

76. While the Complaint alleges that WESPAC is the fiscal sponsor for the NSJP and the Fiscal Sponsor Letter was executed between WESPAC and the NSJP on July 27, 2023, since neither WESPAC or its broker ever disclosed to ANI a fiscal sponsorship with the NSJP nor was any additional premium paid by WESPAC in connection with NSJP's fiscal sponsorship, no coverage is available for the Underlying Action under the D&O Policy.

WHEREFORE, Plaintiff ANI seeks a judgment that it owes no duty under the D&O Policy to defend or indemnify WESPAC in connection with the claims asserted against it in the Underlying Action.

**PRAYER FOR RELIEF**

Plaintiff, ALLIANCE OF NONPROFITS FOR INSURANCE RISK RETENTION GROUP, hereby respectfully request the entry of an order and judgment in its favor and against WESPAC and Manhart declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The CGL Policy does not provide coverage to WESPAC for the claims asserted against it in the Underlying Action.

c. The D&O Policy does not provide coverage to WESPAC for the claims asserted against it in the Underlying Action.

d. ANI does not owe a duty under the CGL Policy to defend WESPAC in connection with the claims asserted against it in the Underlying Action;

e. ANI does not owe a duty under the CGL Policy to indemnify WESPAC in connection with the claims asserted against it in the Underlying Action;

    f.    ANI does not owe a duty under the D&O Policy to defend WESPAC in connection with the claims asserted against it in the Underlying Action;

    g.    ANI does not owe a duty under the D&O Policy to indemnify WESPAC in connection with the claims asserted against it in the Underlying Action;

    h.    ANI is entitled to an award of its costs; and

    i.    Such other further relief as this Court deems just and appropriate.

Dated: New York, New York
February 13, 2025

**KENNEDYS CMK LLP**

/s/ Laura Dowgin
Laura B. Dowgin, Esq.
Attorneys for Plaintiff
*Hiscox Insurance Company, Inc.*
570 Lexington Avenue – 8th Floor
New York, New York 10022
(845) 422-9850
Laura.dowgin@kennedyslaw.com